FRED J. STEWART TRUCKING, INC., ET AL. *v.*
BUNN TRUCKING, INC., ET AL.

[No. 371A39. Filed February 10, 1972. Rehearing denied March 21, 1972. Transfer denied August 16, 1972.]

*Michael V. Gooch, Warren C. Moberly, Harrison, Moberly & Gaston,* of Indianapolis, for appellants.

*Lindy G. Moss,* of Ft. Wayne, *Robert C. Smith,* of Indianapolis, for appellee, Bunn Trucking Co., Inc. *Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee, Public Service Commission of Indiana.

HOFFMAN, C.J.—The issues raised by this appeal, as framed by appellants, are whether the applicant for a permit to transport certain commodities as a contract carrier in intrastate commerce has sustained its burden of proof under the terms of the Indiana Motor Carriers Act, and whether the order of the Public Service Commission of Indiana granting such permit is contrary to law.

The statute with which this appeal is basically concerned is IC 1971, 8-2-7-20, Ind. Ann. Stat. § 47-1222 (Burns 1965), which reads as follows:

"Contract carrier permits—Filing of application—Public hearing—Procedure.— (a) Upon the filing of an application for contract carrier authority to operate motor vehicles in intrastate commerce, the commission shall, within a reasonable time, fix a time and place for a public hearing thereon; and the place of hearing shall be in the city of

Indianapolis unless otherwise ordered by the commission. A copy of the notice of hearing shall be mailed to the applicant, at the address set out in the application, at least ten [10] days prior to the date set for hearing. Any person interested in such proceedings may appear in person, or by counsel, and offer any evidence either in support of, or in opposition to, the granting of the authority requested in the application.

"In determining whether requested contract authority should be granted, the commission shall, among other things, consider the following factors:

"(a) The financial ability of the applicant to furnish adequate contract carrier service;

"(b) The effect of granting the requested authority on existing transportation, and particularly whether the granting of such authority will seriously impair such existing service and will unreasonably impair the efficient public service of any certificated common carrier by motor vehicle, or by railroad, then adequately serving the same territory;

"(c) Whether or not any certificated common carrier by motor vehicle, or by railroad, then serving the same territory, will furnish transportation services designed to meet the distinct need of the supporting contract shipper or shippers;

"If the commission shall, after hearing, ascertain and determine that the proposed operation, as requested in the application, meets all of the requirements of contract carriage, as defined in this act; and that the applicant is qualified in all respects to perform such proposed operation, the commission shall approve the application and issue the requested authority, subject, however, to such terms, restrictions and limitations as the commission may determine.

"The commission shall specify and name in the permit the name of the contracting shipper, or shippers; the business of the contract carrier covered thereby; and the scope of the permit to which shall be attached at the time of issuance, and from time to time thereafter, such reasonable terms, conditions and limitations consistent with the character of the holder as a contract carrier: Provided, That the provisions of this amendatory section shall in no way amend, alter or revise any contract carrier permit which has been issued by the commission prior to the effective date of this amendatory act or limit the permit holder's right to add additional contracting shippers."

The briefs of both parties, as filed herein, give detailed descriptions of the factual background of this case. Additionally, appellants' brief sets forth much of the testimony given at the hearing. Having reviewed thoroughly the briefs of both parties, we will not burden this opinion with all of the detailed facts involved in this appeal. For conciseness and clarity a summary of the relevant facts is here set forth:

Robert L. Bunn Trucking, Inc. (Bunn) filed application before the Public Service Commission (Commission) to obtain a permit as a contract carrier of property, intrastate, to transport "[d]irt, sand, gravel, stone and bituminous materials (except liquids and all materials transported in or by tank vehicles, and cement in bags or in bulk), between points and places within a radius of 35 miles of Fort Wayne, Indiana, over irregular routes. Restricted: To a transportation service to be performed under a contract with Wayne Asphalt and Construction Co., Inc., Allen County, Indiana."[1]

Legal notice of public hearing was then duly published, whereupon several protestants, including appellants herein, filed their protests to such application.

Following the hearing of the evidence, the Commission submitted its report and recommended order granting the application; the protestants filed their exceptions to the report and recommended order and brief in support of such exceptions; and Bunn, the applicant, filed its "Brief in Support of Commission's Findings and [recommended] Order Granting Authority." Thereafter, the Commission entered its order granting the authority sought by Bunn. Protestants then filed their petition for reconsideration which was denied by the Commission, giving rise to protestants' assignment of error which, omitting caption and formal parts, reads as follows:

---

1. This is the scope of authority sought after amendment to the pertinent portion of the original application.

"The Appellants, having been parties to the proceedings below, and adversely affected by the decision therein, aver that there is manifest error in the decision in this cause, which is prejudicial to Appellants, in this:

"1. That the decision and orders of the Commission in recommending the authority sought by Applicant to be granted, and by overruling Protestants' exceptions and petition for reconsideration, are contrary to the law."

In reviewing a determination, decision or order of the Public Service Commission, this court must bear in mind that the "Public Service Commission performs a legislative function and is not a part of the judicial division of our government." *Pub. Serv. Comm. of Ind. et al.* v. *Ind. Tel. Corp.* (1957), 237 Ind. 352, 368, 146 N. E. 2d 248, 256. This court cannot weigh the evidence nor substitute its judgment or discretion for that of the Commission. The findings of the Commission will not be disturbed where the Commission has conformed with the statutory procedural methods and where its decision is supported by substantial evidence. *Daviess-Martin Co., etc.* v. *Pub. Serv. Comm.* (1961), 132 Ind. App. 610, 174 N. E. 2d 63 (transfer denied).

In respect to applicable provisions of the Motor Vehicle Act, IC 1971, 8-1-1-5, Ind. Ann. Stat. § 54-112 (Burns 1951), requires the Public Service Commission to make specific findings of the ultimate facts upon which its decision rests. "The failure of the Public Service Commission to find specific facts upon which its order * [is] based in this case * [would make] it illegal and unlawful." *Wabash Valley Coach Co.* v. *Arrow Coach Lines* (1950), 228 Ind. 609, 616, 94 N. E. 2d 753.

The first contention raised by appellants-protestants is that the Commission failed to consider § 47-1222 (c), *supra*, in its order.

The import of subsections (a), (b) and (c) of § 47-1222, *supra*, is that in determining whether or not to grant the

requested contract authority, the Commission must, along with other relevant considerations of the requirements imposed by the Motor Carriers Act, find that (a) applicant has financial ability to furnish adequate contract carrier service; (b) the effect of granting the requested authority will not seriously impair existing or public service; and (c) the applicant will furnish services designed to meet the distinct need of the shipper that certificated common carriers will not.

Thus, the findings and order of the Commission must be reviewed to determine if requisite facts have been specially found.

The findings of the Commission include the following:

"1. The Commission has jurisdiction over the subject matter and the parties herein.

"2. Only Radabaugh Bros. Trucking Co., Inc., Wanatah Trucking Co., Inc. and Donald F. Stone Trucking Co., Inc. are interested parties to these proceedings.

"3. The Applicant is a resident of the State of Indiana and has engaged in the transportation of property for a number of years, previously as a sole proprietor and presently as a corporation.

"4. The Applicant is financially able to render the services of the proposed authority and presently has adequate equipment to render such service.

"5. The Applicant has and maintains an adequate safety program, has adequate facilities for and does properly maintain his equipment so as to comply with the laws of Indiana.

"6. The service of a contract carrier is necessary to the shipper and in the public interest; the Applicant will dedicate his motor vehicles to the use of the Shipper; and the service proposed will meet the needs of Wayne Asphalt and Construction Co., Inc.

"7. The granting of authority found herein will not impair the services of any authorized common carrier. The Applicant will abide by the Rules and Regulations of the Public Service Commission of Indiana and the laws of this State, if the requested authority is granted.

"8. The authority to operate motor vehicles as a contract carrier in intrastate commerce should be granted as defined in Applicant's amended application upon the performance of the conditions as hereinafter set out, and it will be so ordered."

Finding No. 4, above, reveals that the Commission considered subsection (a) of § 47-1222, *supra*, and has made its ultimate finding of fact thereon. Finding No. 7, above, reflects that subsection (b) has been considered, and the Commission's finding thereon has been entered. Similarly, Finding No. 6, above, clearly indicates that the Commission has considered subsection (c) and has entered its ultimate finding of fact in favor of applicant-Bunn.

Findings of fact must be made specially and not generally. *Indpls. & So. Motor Exp., Inc.* v. *Pub. Serv. Comm.* (1953), 232 Ind. 377, 381, 112 N. E. 2d 864. "The findings must be specific enough to enable the court to review intelligently the Commission's decisions." *Kosciusko County, etc.* v. *Public Service Comm.* (1948), 225 Ind. 666, 674, 77 N. E. 2d 572.

Where, as here, the findings of ultimate fact have been entered; where, as here, the findings are sufficiently specific to enable intelligent review; and where, as here, the findings indicate on their face that the statutorily prescribed considerations have been made and the facts found in favor of the applicant this court will not remand the case to the Commission for the repetitive and unnecessary task of including the exact statutory language in the findings.

Alternatively, protestants contend that there is no evidence to support a finding under subsection (c) of § 47-1222, *supra*. This subsection reads:

"(c) Whether or not any certificated common carrier by motor vehicle, or by railroad, then serving the same territory, will furnish transportation services designed to meet the distinct need of the supporting contract shipper or shippers ;".

The record is replete with conflicting evidence as to this consideration. It is, therefore, unnecessary to address appellants' arguments concerning which party had the burden of proof since our search of the record is limited to substantial evidence from which the finding could have been made.

The Vice-president and General-Manager of the shipper, Wayne Asphalt and Construction, Inc., testified that the applicant-Bunn has equipment especially suited to small "non-highway" jobs comprising the bulk of their work, that the contract carrier will fulfill his needs at all times, that common carriers are moving toward the use of larger trucks than are effective with his "small paver", and that there are periods of peak demand when no common carriers were available.

The President and owner of the applicant company testified as to the nature of his equipment, his competence, and his company's ability to serve the need of the proposed shipper.

The protesting companies appeared and testified as to their equipment and ability to serve the needs of Wayne Asphalt and Construction, Inc.

In light of this conflicting testimony, we must emphasize that we will not weigh the evidence. The testimony set forth above, along with other testimony and evidence contained in the record, provided a sufficient factual basis upon which the Commission could have based its conclusion.

Finally, protestants contend that the grant of authority to the applicant is contrary to law because no evidence was adduced to show that any transportation was required outside an exempt area.

IC 1971, 8-2-7-3, Ind. Ann. Stat. § 47-1213 (Burns 1965) provides certain exemptions from the provisions of the Motor Carriers Act, in pertinent part, as follows:

"(a) To motor vehicles, if owned by bona fide residents of the state of Indiana, engaged in transporting property between point of origin and point of destination, both of

said points being within the same city or town, and/or the suburban territory of such city or town as herein defined: * * *."

The definition of "suburban territory" is found in IC 1971, 8-2-7-2, Ind. Ann. Stat. § 47-1212(1) (Burns 1971 Supp.), as follows:

"(1) The term 'suburban territory' means territory wholly within the state of Indiana which extends not more than one [1] mile beyond the corporate limits of any municipality in this state, and one [1] mile additional for each fifty thousand [50,000] population or major fraction thereof: Provided, That the term 'suburban territory' shall not include other incorporated cities or towns within or adjacent to the area included within the base city or town."

The record herein provides no indication of where the corporate limit or suburban territory would be. However, on direct examination, the Vice-President and General-Manager of Wayne Asphalt and Construction, Inc., testified as follows:

"Q Where are these plants located?

"A I have one at May's Stone and Sand on Ardmore. I guess it's in the southwest part of Fort Wayne. And we have another plant there, too, by the way. We have two plants there. And we have another plant at Stone Street. Stone-Street Gravel Company I believe is the way it's listed. And that is down by Poe, Indiana. It's about a half-a-mile off Highway 27, about seven miles south of Fort Wayne."

And, further, on cross-examination this witness testified as follows:

"Q Mr. Stewart, the Stone-Street quarry at which one of your plants is located, how far is that from Fort Wayne, Indiana?

"A I'm not positive where the city limit is. It's seven miles from Tillman Road, but I don't know whether that is the city limit or not. It's seven mile from that point. From Highway 27 and Tillman Road it's seven miles.

"Q When you responded earlier to a question by Mr. Moberly that that is within the terminal area, which is five miles outside of the city limit, you were mistaken. In other words, if it's seven miles . . .

"A (Interposing) The plant itself is that far.

"Q Yes.

"A It's seven miles.

"Q So if you're hauling from that plant, that quarry would be without the terminal area?

"A It would be if the city limit is at that road. Like I say, they have changed it.

"Q It is your belief that this is seven miles from the city limits of Fort Wayne?

"A The Stone-Street quarry?

"Q Yes.

"A I don't know. I don't know where the city limit is. I know that from that point—I know what the distance is from that point, but I'm not sure where the city limit is. I think it runs on south of there.

"Q All right. In any event if that is outside the five-mile radius you were in error in stating that it was within the terminal area?

"A Right."

Additionally, there is testimony to the effect that in the past the shipper had done a small portion of its work as far as forty miles from Fort Wayne.

In an evidentiary hearing of this type it is the function of the Commission to hear the testimony and determine the credibility of the witnesses. With the testimony in the record that we have herein set forth, we cannot say that the Commission's determination that the contract hauling would be outside the exempt area was contrary to law.

The order of the Public Service Commission of Indiana is affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 278 N. E. 2d 310.