COASTAL TANK LINES, INC. *v.* PUBLIC SERVICE COMMISSION
OF INDIANA, ESSEX & KOUNS, INC.

[No. 2-1075A291. Filed June 23, 1976.]

*Michael V. Gooch, Harrison, Moberly & Gaston,* of Indianapolis, for appellant.

*Edwin J. Simcox, Jones & Simcox,* of Indianapolis, for appellee.

## STATEMENT OF THE CASE:

LOWDERMILK, J.—On July 22, 1974, Applicant-appellee Essex & Kouns, Inc. (Applicant) sought intrastate contract carrier authority from the Public Service Commission of Indiana (Commission) to truck feed, fertilizer, and insecticides in and out of the plant and facilities of Crop Systems. Protestant-appellant Coastal Tank Lines, Inc., (Coastal) protested Applicant's request for authority. and participated in the Commission hearing on the matter on October 2, 1974. The Commission on August 14, 1975, issued its order granting limited contract carrier authority to Applicant and overruling Coastal's exceptions. The Commission denied Coastal's petition for reconsideration on October 1, 1975.

We affirm.

## FACTS:

Applicant is an Indiana corporation doing business in or near Whitestown, Indiana, as a storer of grain and a custom hauler. Crop Systems is owned and operated by David Robertson (Robertson) and does business as a retailer and wholesaler of agricultural feeds, fertilizer, and insecticides in or near Whitestown. Coastal is a common carrier possessing

both interstate and Indiana intrastate authority to haul various tank truck commodities—including nitrogen. One of Coastal's four terminals in this State is at Zionsville, which is eight to ten miles from Whitestown.

Coastal protested the application for and permit of authority to Applicant to the extent that it encompassed the transportation of nitrogen in liquid form.[1]

Crop Systems supported the application and permit. It desired to contract for the exclusive services of Applicant's tank trailer to haul liquid fertilizer, as well as the non-exclusive use of Applicant's other equipment to transport the other commodities listed in the application.

Previously, about 40% of the liquid fertilizer shipped into Crop Systems' plant had been hauled by common carriers. Robertson usually allowed his suppliers to secure the services of carriers, including Coastal, because he believed the suppliers, being larger concerns, would be more apt to get service.

Still he was dissatisfied with the performance of the carriers in that they were often unable to provide the spur of the moment hauling that was necessary to his liquid fertilizer business. In addition to the delays, he desired more knowledge of and control over the deliveries.

On one occasion he attempted to arrange for common carrier service himself. After being unable to get assurance of prompt enough service from three carriers other than Coastal, he ceased his efforts.

Although his liquid fertilizer customers generally requested delivery, he told them they would have to pick up their orders or call a carrier. Once he arranged for a common carrier other than Coastal to deliver to a customer who had no complaints. Two other times he lost orders to a competitor due to his lack

---

1. For purposes of this opinion the term "liquid fertilizer" shall include any liquid fertilizer commodity that contains nitrogen, whether as the sole nutrient or in combination with others. But we do not find it necessary to define the scope of Coastal's common carrier authority which encompasses "nitrogen solutions."

of delivery capacity, although he did not attempt to secure a carrier to deliver. Outbound shipping constituted only 10% of his transportation needs.

Applicant's equipment would satisfy Crop Systems' intrastate trucking needs.

Coastal had a dozen tank trailers at Zionsville suitable for hauling liquid fertilizer and a total of 41 in Indiana. There was only a "50-50 chance" that it could provide Crop Systems with same day service; the best it could guarantee was service within 24 hours. Nor could it absolutely assure Crop Systems that its drivers would be able to haul orders out immediately after delivering liquid fertilizer.

It kept a close dispatch rein over the location of its drivers and rigs; and its drivers had to secure authority from the dispatcher to move any load.

The Public Service Commission entered the following findings:

"1. That the Commission has jurisdiction of the parties hereto and the subject matter of this cause, which now are properly before the Commission for finding, determination and order.

2. That the Applicant is an Indiana corporation with its principal place of business at R.R. 1, Whitestown, Indiana.

3. That the Applicant seeks authority as a contract carrier to transport feed, fertilizer and insecticides between Whitestown, Indiana, and points in Indiana restricted to traffic originating at or destined to the plant and facilities of David Robertson d/b/a Crop Systems, Whitestown, Indiana; that Applicant has failed to sustain its statutory burden of proving that public convenience and necessity require and support a grant of authority coextensive with the application herein under consideration; that Applicant has submitted that quantity of probative evidence showing public convenience and necessity for a grant of authority to transport insecticides, fertilizer (dry and liquid mixed and nitrogen solutions) between Whitestown, Indiana, and points in Indiana and feed from Logansport, Indana, to Whitestown, Indiana, restricted to transportation services performed pursuant to a contract or continuing contracts with David Robertson d/b/a Crop Systems, Whitestown, Indiana.

4. That the Applicant is financially able to perform the proposed service and has sufficient equipment to perform said service.

5. That the Applicant is familiar with the laws of the state of Indiana and the Rules and Regulations of the Public Service Commission of Indiana, as the same apply to a contract carrier of property, intrastate, and will abide by them.

6. That the character and condition of the motor vehicle equipment proposed to be used by Applicant upon the public highways and bridges of Indiana are such that the same may be operated without injury or damage to such highways and bridges, and without unreasonable interference with the use of same by the general public.

7. That the character of the proposed service to be rendered by Applicant conforms in all respects with the definition of a contract carrier of property, intrastate, as set forth in the Indiana Motor Carrier Act of 1935, as amended.

8. That the granting of the application will in no way unreasonably impair the efficient public service of any certificated common carrier serving the same territory.

9. That the authority now held by Applicant under Docket No. 4248-B, 1, does not duplicate the authority herein granted, should not be cancelled, and it will be so ordered.

10. That partial granting of the application for the authority herein will serve the public interest; that a permit should be issued to the Applicant in accordance herewith, and the Exceptions of the Protestant, Coastal Tank Lines, Inc. should be overruled, and it will be so ordered."

The Commission limited Applicant's intrastate contract carrier authority to:

"Insecticides, fertilizer (dry and liquid mixed and nitrogen solutions), Between Whitestown, Indiana, and points in Indiana.

Feed,

From Logansport, Indiana, to Whitestown, Indiana."[2]

---

2. Inasmuch as anhydrous ammonia fertilizer is a gas we find it unnecessary to deal at length with Coastal's contention that Applicant's contract carrier authority, which covers only solid and liquid fertilizers, is too broad because it includes anhydrous ammonia, a commodity that was excluded from the Commission's proceedings.

## ISSUES:

Coastal assigns one error in its appeal: that the decision and orders of the Commission are contrary to law.

The briefs of the parties revolve around three issues that are dispositive of the lawfulness of the Commission's actions:

1. Whether Applicant satisfied its statutory burden of showing that it would provide transportation services designed to meet the distinct need of Crop Systems.

2. Whether the Commission specifically found facts to supports its grant of authority to Applicant.

3. Whether there was improper questioning of Applicant's witness Robertson by the Hearing Examiner of the Commission.

## DECISION:

ISSUE ONE:

The statute governing the issuance of contract carrier permits by the Commission is IC 1971, 8-2-7-20 (Burns Code Ed.), the pertinent part of which states:

"In determining whether requested contract authority should be granted, the commission shall, among other things, consider the following factors:

(a) The financial ability of the applicant to furnish adequate contract carrier service;

(b) The effect of granting the requested authority on existing transportation, and particularly whether the granting of such authority will seriously impair such existing service and will unreasonably impair the efficient public service of any certificated common carrier by motor vehicle, or by railroad, then adequately serving the same territory;

(c) Whether or not any certificated common carrier by motor vehicle, or by railroad, then serving the same territory, will furnish transportation services designed to meet the distinct need of the supporting contract shipper or shippers;

If the commission shall, after hearing, ascertain and determine that the proposed operation, as requested in the application, meets all of the requirements of contract carriage, as defined in this act; and that the applicant is quali-

fied in all respects to perform such proposed operation, the commission shall approve the application and issue the requested authority, subject, however, to such terms, restrictions and limitations as the commission may determine."

The "requirements of contract carriage" are set forth in IC 1971, 8-2-7-2 (Burns Code Ed.) :

"(g)   The term 'common carrier' shall mean any person that holds himself out to the general public to engage in the transportation by motor vehicle of passengers or property, for compensation, whether over regular or irregular routes.

(h)   The term 'contract carrier' shall mean any person who engages in transportation by motor vehicle of passengers or property, for compensation (other than transportation referred to in subparagraph (g) of this section), under continuing contracts with one person, or a limited number of persons, either (a) for the furnshing of transportation services through the dedication of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer."

This court discussed the distinct need issue in *Graves Trucking, Inc.* v. *B. G. Trucking Co.* (1972), 151 Ind. App. 563, 568-9, 280 N.E.2d 834:

"How should the term 'distinct need' be interpreted? We find such descriptive words as 'specialized', 'select', and 'tailored' used in the federal cases. Discussing the proper procedure and shifting of the burden of proof, the United States Supreme Court in *Interstate Commerce Commission* v. *J-T Transport Co., Inc.* (1961), 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147, has stated:

'The proper procedure, we conclude, is for the applicant first to demonstrate that the undertaking it proposes is specialized and tailored to a shipper's distinct need. The protestants then may present evidence to show they have the ability as well as the willingness to meet that specialized need. If that is done, then the burden shifts to the applicant to demonstrate that it is better equipped to meet the distinct needs of the shipper than the protestants.

'Moreover, . . . the standard is not whether existing services are "reasonably adequate." It is whether a shipper has a "distinct need" for a different or a more select

or a more specialized service. The protesting carriers must show they can fill that "distinct need," not that they can provide a "reasonably adequate service."

'The "distinct need" of the shipper may nonetheless not be served by existing services, if the new service is better tailored to fit the special requirements of a shipper's business, the length of its purse, or the select nature of the delivery service that is desired.' "

*Graves* looked to the federal opinion because it interpreted a federal statute which is identical to IC 1971, 8-2-7-20, *supra*.

The record contains ample evidence that Crop Systems needs delivery of liquid fertilizer from its suppliers on a shorter notice basis than common carriers have been able to deliver and that its business requires more knowledge of and control over hauling than was available when common carriers were engaged.

Although Coastal points out evidence in support of its claim that it can also satisfy Crop Systems' needs as to the liquid commodities only our decision in *Fred J. Stewart Trucking, Inc.* v. *Bunn Trucking Co.* (1972), 151 Ind. App. 157, 278 N.E.2d 310, prevents us from weighing the evidence favoring each party or delving into which party had the burden of proof; our examination of the record must be confined to satisfying ourselves that there is substantial evidence upon which the Commission could have based its grant of authority.

*Stewart* explains our standard, at p. 161:

". . . This court cannot weigh the evidence nor substitute its judgment for that of the Commission. The findings of the Commission will not be disturbed where the Commission has conformed with the statutory procedural methods and where its decision is supported by substantial evidence."

The record discloses substantial evidence of a distinct need by Crop Systems for a more select or a more specialized service; the record includes substantial evdence that Applicant's contract carrier service would be better tailored to fit the special requirements of Crop Systems' liquid fertilizer business

and the select nature of the delivery service that Crop Systems desires. Coastal does not charge the Commission with any failure to conform to the statutory procedure.

Coastal does contend that Applicant's supporting witness, Crop Systems, cannot claim to have an unfilled distinct need for contract carrier service unless it has first given Coastal an opportunity to satisfy its needs.

Five common carriers including Coastal, all of whose services were obtained by Crop Systems' suppliers, hauled liquid fertilizer into Crop Systems' plant. Still Crop Systems suffered from delays and too little knowledge of and control over the shipments.

On one occasion three carriers other than Coastal that were contacted by Crop Systems could not provide the service it needed.

We therefore conclude there was substantial evidence that Crop Systems made a reasonable effort to fill its needs with the services of common carriers who had the necessary equipment and authority. We will not require a shipper to contact each and every common carrier with the necessary Indiana intrastate authority before asserting a distinct need for contract carrier hauling.

ISSUE TWO:

Coastal next attacks the findings of the Commission, set forth above, alleging that they do not contain specific facts supporting its grant of authority to Applicant.

We hold that the Commission's findings are not deficient inasmuch as they are specific enough to enable us to intelligently review the decision by the Commission. *Stewart, supra.*

ISSUE THREE:

Coastal lastly asserts that the trial examiner's questioning of Applicant's witness Robertson was improper in that the

trial examiner led the witness and interjected matters into the hearing.

A trial examiner may question a witness as long as the examination is within reasonable limits. See *Kennedy* v. *State* (1972), 258 Ind. 211, 280 N.E.2d 611, aff'd after remand, 262 Ind. 295, 315 N.E.2d 350. Inasmuch as the questions of the trial examiner, the finder of fact in this administrative proceeding, pertained to critical facts and since the trial examiner did not usurp the duties of Applicant's counsel, we conclude her questions to witness Robertson did not exceed a reasonable scope. See *Swift* v. *State* (1970), 255 Ind. 337, 264 N.E.2d 317; *U.S.* v. *Miller* (1968), 395 F.2d 116 (7th Cir.), *cert. den.*, 393 U.S. 846.

Dean McCormick in his *Handbook on the Law of Evidence* (2d Ed. 1972), § 348, p. 837, states:

". . . [A]n administrative hearing is tried to the *trial examiner* and never to a *jury*. Since many of the rules governing the admission of proof in judicial trials are designed to protect the jury from unreliable and possible confusing evidence, the rules need not be applied with the same vigor in proceedings solely before a . . . trial examiner." (Original emphasis.)

See also IC 1971, 4-22-1-8 (Burns Code Ed.)

And leading questions from the person conducting a proceeding are not error *per se. Huffman* v. *Cauble* (1882), 86 Ind. 591.

Therefore, we conclude that the trial examiner's questions did not violate the expanded rules of evidence for administrative hearings.

It is our opinion that the trial examiner's questioning was not improper.

There was substantial evidence to support the Commission's adequate findings and we therefore affirm.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 349 N.E.2d 291.