Jack BLACK, State Director, Indiana Legislative Board, United Transportation Union, Appellant Petitioner,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, Appellee Respondent.

No. 2–179A26.

Court of Appeals of Indiana, First District.

Jan. 17, 1980.

Rehearing Denied Feb. 19, 1980.

Nelson G. Grills, Indianapolis, for appellant petitioner.

Martin K. Edwards, New Castle, for appellee respondent.

ROBERTSON, Presiding Judge.

Jack Black (Black) as State Director of the Indiana Legislative Board, United Transportation Union, brought an action against the Baltimore and Ohio Railroad Company (B & O), to correct alleged hazardous conditions at B & O's Moorfield Yards in Indianapolis. The Public Service Commission of Indiana (PSC) dismissed the complaint on the basis of federal legislation and regulations which pre-empt State action. We affirm.

The complaint alleged that pumping actions in low joints, lack of good crossties, ballast and poor drainage created a muddy condition in which trainmen must walk while switching cars. The complaint requested that PSC order B & O to institute a

program to correct these hazardous conditions.

The issue presented for our review is whether the PSC is pre-empted from taking action in this area as a result of the Federal Railroad Safety Act, 45 U.S.C. § 421 *et seq.*, and various regulations adopted by the Federal Railroad Administration. We conclude that although the particular condition alleged as hazardous has not been dealt with by specific federal regulations, the intent of Congress is clear. Furthermore, the regulations as adopted indicate a congressional determination to regulate the entire railroad area.

We first note that on review, this court can neither weigh the evidence nor substitute our judgment for that of the PSC. We will look to see if there was compliance with the statutory procedural methods, and whether the decision was supported by substantial evidence. *See Coastal Tank Lines, Inc. v. Public Service Commission,* (1976) Ind.App., 349 N.E.2d 291; *Fred J. Stewart Trucking, Inc. v. Bunn Trucking Co.,* (1972) 151 Ind.App. 157, 278 N.E.2d 310.

There can be no question that the ultimate goal of the Federal Railroad Safety Act is to establish nationally uniform control of railroad safety. Congressional intent was clearly enumerated in the Act, wherein Congress stated:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order,

or standard, and when not creating an undue burden on interstate commerce. 45 U.S.C. § 434.

■ What must be decided, therefore, in proceeding cognizant of this expressed intent, is whether the federal government has adopted a rule, regulation, order, or standard, on the subject matter which will preclude state action, or whether the hazard involved is particularly local in nature and the resulting state order is not incompatible with federal law and does not create an undue burden on interstate commerce.

The Federal Railroad Administration has adopted numerous regulations concerning track roadbed, geometry and structure. *See* 49 CFR Chapter II. Subpart B of Part 213 deals with the roadbed and has regulations concerning drainage § 213.33, and vegetation § 213.37. The drainage section states that "Each drainage or other water carrying facility under or immediately adjacent to the roadbed must be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned." Subpart B is designed to prescribe the minimum requirements for the roadbed and areas immediately adjacent to the roadbed.

Subpart D deals with track structure and among other things, contains regulations on ballast § 213.103, § 213.105, crossties § 213.-109 and rail joints § 213.121. In dealing with ballast, the regulations state that "unless it is otherwise structurally supported, all track must be supported by material which will . . . (c) Provide adequate drainage for the track; . . . ." 49 CFR § 213.103(c).

From a reading of both these subparts, it is apparent that the federal government has entered the area of railroad safety to a sufficient extent to preclude state action in response to Black's complaint. We do not feel that the mere absence of a specific regulation dealing with muddy conditions is sufficient to permit state action. The fact that regulations have been adopted on those conditions that are alleged to have contributed to the situation around the track is sufficient.

Notwithstanding the fact that regulations have been adopted on the subject, states can nonetheless "force an additional or more stringent law, rule, regulation, order, or standard . . . when necessary to eliminate or reduce an essentially local safety hazard . . . ." 45 U.S.C. § 434. We are not persuaded, however, that the conditions at the Moorfield Yards present a distinctively local safety hazard which would authorize state action under § 434.

Due to the national structure of the railroad industry, legislation dealing with the railroads should not be construed strictly. A narrow interpretation of the Federal Railroad Safety Act would frustrate its purpose. *Atchison, Topeka and Santa Fe Railway Co. v. Illinois Commerce Commission,* (N.D.Illinois E.D.1977) 453 F.Supp. 920. Similarly, we feel the congressional intent of the Act was to pre-empt most state regulation dealing with railroad safety and since the Act's goal was to establish uniform control of railroad safety, the statutory and regulatory provisions evince a "total pre-emptive intent." *See Atchison, supra; National Association of Regulatory Utility Commissioners v. Coleman,* (3rd Cir. 1976) 542 F.2d 11; *Donelon v. New Orleans Terminal Co.,* (5th Cir. 1973) 474 F.2d 1108.

Although there are no cases precisely on point, it is evident from the standpoint of both legislative intent and prior judicial interpretation that state action in the area of railroad safety has been pre-empted by federal legislation and regulations. The issuing of regulations dealing with track structure and roadbed, although not dealing specifically with the muddy conditions associated with the situation at the Moorfield Yards, are sufficient to demonstrate an intent by the federal government to regulate the entire area associated with track structure and track roadbed. The Public Service Commission was correct in dismissing the complaint, as 'they were pre-empted from acting in the areas complained of by virtue of the provisions of the Federal Railroad Safety Act and corresponding federal regulations.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.