**COASTAL TANK LINES, INC.,**
**Appellant (Protestant Below),**

v.

**PROPANE TRANSPORT, INC., Appellee.**

**No. 2-580A126.**

Court of Appeals of Indiana,
Third District.

Feb. 10, 1981.
Rehearing Denied March 18, 1981.

Robert B. Hebert, Harrison & Moberly, Indianapolis, for appellant.

Alki E. Scopelitis and Richard A. Huser, Scopelitis & Garvin, Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

This is an appeal by Coastal Tank Lines, Inc. from an order of the Public Service Commission (PSC). The PSC order granted Propane Transport, Inc.'s application for a certificate of public convenience and necessity to operate as an intrastate common carrier of liquified petroleum gas (LPG). Coastal filed an assignment of errors asserting that the PSC order is contrary to law.[1]

---

1. An assignment of errors that the order of the PSC is contrary to law is sufficient to present both the sufficiency of the facts found to sustain the order, and the sufficiency of the evidence to sustain the finding of facts upon

Propane Transport is a regulated intrastate contract carrier. It initiated proceedings to convert its contact carrier permits into a certificate of public convenience and necessity in order to operate as an intrastate common carrier of LPG.[2] Testimony in support of the application was given at the public hearing by: Warren Petroleum Company, California Liquid Gas Corporation, Pyrofax Gas Corporation, Indiana Farm Bureau Cooperative Association, Inc., Commonwealth Propane Company and Petrolane/Rochester Leasing, Inc. All the witnesses in support of the application are shippers of LPG. Only Coastal, an intrastate and interstate common carrier of LPG appeared in opposition to the application.

Essentially each shipper testified as to the origin points of their LPG traffic as well as their customer locations within Indiana. The shippers also testified to their needs for a safe and dependable transportation service that is properly equipped and qualified to handle the transportation of LPG in specialized pressure tank trailers. Evidence of recent past, present and projected future LPG traffic and the portion thereof that would be tendered to Propane Transport if the application was approved was also presented. The shippers also expressed a desire for the flexibility Propane Transport could offer due to its position as an interstate common carrier.

In opposition to the application, Coastal presented evidence that it had the equipment, personnel, interest, need and operating authority to transport LPG between all points within Indiana as a common carrier. Coastal also presented evidence of its interstate and intrastate authority as a common carrier to transport LPG between points within several midwestern states. Exhibits introduced by Coastal showed that its Indiana operations for transporting LPG were not used to their capacity between January 1977 and May 1979.

The administrative law judge submitted a report and recommended order for approval to the PSC. The PSC accepted the report and granted the intrastate common carrier authority. Coastal filed its exceptions and the PSC later issued an order denying the application. Propane Transport was granted a reconsideration of the denial order. Upon reconsideration, the PSC partially reversed the denial order and approved Propane Transport's application in part. The PSC order allowed Propane Transport to act as an intrastate common carrier of LPG "[f]rom East Chicago, Griffith, Huntington, Indianapolis, Milford, Princeton/Oakland City, Seymour and Whiting, Indiana to points in Indiana."

Coastal contends that the PSC order is contrary to law in that the PSC considered evidence of Propane Transport's past operations as a contract carrier in making its determination of public convenience and necessity. Coastal relies primarily on the Interstate Commerce Commission's decisions in *Connell Transport Co., Inc., Conversion Application* (1964), 95 M.C.C. 312 and *Eastern States Transp., Inc., Com. Car. Application* (1965), 99 M.C.C. 524 to support its position.

■ Contrary to Coastal's argument, the cited cases do not hold that evidence of past operations cannot be considered in a conversion proceeding. The cases hold only that such evidence alone, absent support from shippers, is insufficient to sustain a grant of an application in the interest of public convenience and necessity. *Connell* states:

"In support of an application such as the instant one, *applicant should submit a detailed statement of its past lawful operations for some substantial period so that its claim of use of the authority it seeks to convert can be verified,* and it should offer to surrender for cancellation authority which has not been the basis of past operations. However, *evidence of past operations alone normally will not be sufficient* for reasons which are even stronger now than they were when a similar conclusion was reached in the Fischbach [*Fischbach Trucking Co., Com-*

---

which it was rendered. IC 1971, 8-1-3 1 (Burns Code Ed.).

2. IC 1971, 8-2-7-13 (Burns Code Ed.).

*mon Carrier Application,* (1953) 61 M.C.C. 539] case. Unlike the situation obtaining at the time of that decision, the past operations of a contract carrier seeking today to convert its permits to certificates necessarily will have been restricted to service for a limited number of persons. Shipper testimony which will demonstrate a need for applicant's services as a common carrier rather than as a contract carrier should, therefore, be produced. It is obvious that applicant here has failed to present evidence of this kind, and the application, accordingly, must be denied." (Emphasis added.)

95 M.C.C. at 319.

Subsequent cases relying on *Connell* have held that the elements of proof in conversion proceedings "in addition to evidence of applicant's past lawful operations for some substantial period of time pursuant to its contract carrier authority, ... [should also include] shipper testimony which will demonstrate a need for applicant's services as a common carrier rather than as a contract carrier." *Ferree Moving and Storage, Inc., Conversion Application* (1969), 110 M.C.C. 375, at 378. *See also, Eastern States Transp., Inc., Com. Car Application* (1965), 99 M.C.C. 524.

■ It is clear that the ICC deems evidence of prior operations as a contract carrier not only desirable, but essential. Although the ICC decisions are not binding on this Court, the reasoning behind them is persuasive. It is therefore ruled that the PSC's consideration of Propane Transport's past operations as a contract carrier is not contrary to law.

Coastal also contends that the PSC order is contrary to law because of the PSC's consideration of evidence relating to Propane Transport's interstate operating authority. Coastal argues that in considering such evidence the PSC is giving special consideration to motor carriers with interstate authority to the detriment of intrastate carriers without similar authority. According to Coastal, the PSC may only consider factors in intrastate commerce when determin-

ing public convenience and necessity in relation to an application for intrastate common carrier authority.

In *V. I. P. Limousine Serv. v. Herider-Sinders* (1976), 171 Ind.App. 109, 355 N.E.2d 441, the Court distinguished the burdens of proof for applicants seeking common carrier authorities and those seeking a contract carrier permit. The former has the burden of proving "public convenience and necessity" while the latter must prove a "distinct need." [3] The Court, declining to set either minimum standards or minimum burdens of proof in public convenience and necessity cases, stated:

"In the 'distinct need' contract carrier situations, the supporting shippers are a clearly defined evidentiary source, whose needs are to be served by the applicant. The identified individual shippers can readily testify as to the specifics of their respective 'distinct needs.' The common carrier applicant may not so readily amass and present supportive evidence, since that evidence must relate to a multifaceted, if not illusory, conglomerate—the public at-large. *Because the public's needs and demands are gauged by many variables, specific evidentiary factors necessary to establish 'public convenience and necessity' may not, therefore, be categorized or fixed.*" (Emphasis added.)

Id. at 445.

■ The evidence of Propane Transport's interstate operations was introduced to show the advantages of a carrier that could operate both as an interstate and intrastate common carrier. If an available carrier has both interstate and intrastate authority, the shipper has flexibility in choosing a source from which to acquire LPG. This flexibility is necessary due to extreme fluctuations in LPG price, supply and transportation availability. During peak seasons for LPG this flexibility would allow for better utilization of equipment and thus better service to customers. Although evidence of interstate operations alone may not be sufficient to establish public convenience and necessi-

**3.** IC 1971, 8-2-7-20(c).

ty, it is certainly a factor upon which the PSC, in its discretion, may receive evidence.

Coastal finally challenges the sufficiency of the evidence in regard to the PSC determination that approval of Propane Transport's application is in the interest of public convenience and necessity. Coastal also argues that the evidence is insufficient to sustain the PSC's finding that a grant of the application would not unreasonably impair its operations.

 In reviewing the sufficiency of the evidence to sustain an administrative agency's grant of authority, this Court will not weigh the evidence nor substitute its judgment for that of the PSC. The function of an appellate court is to examine the record to determine if there is substantial evidence upon which the PSC could have made its decision. *Coastal Tank Lines, Inc. v. PSC et al.* (1976), 169 Ind.App. 518, 349 N.E.2d 291.

 Coastal is essentially challenging the following findings by the PSC:

"5. That the Applicant has performed substantial past operations on behalf of existing contracting shippers; that it agrees to cancel existing contracts and permits by a grant of this application; that the supporting shippers have no objection to utilizing Applicant as a common carrier; that these past operations, coupled with shipper support, constitute evidence of a need for service within the scope of the past operations;

"6. That the supporting shippers express a need for additional transportation for the movement of LPG from sources other than those involved in existing permits; that those supporting shippers not presently utilizing the Applicant in intrastate commerce do utilize the Applicant in interstate commerce and require the flexibility of that service; that the Protestant is the only carrier having broad authority within the State of Indiana to provide specialized service in the transportation of LPG in pressurized trailers; that the Protestant cannot meet the increasing demands of the LPG industry.

"7. That the supporting shippers' traffic moves in concentrated periods, whereby excessive equipment demands are made upon for-hire carriers; that during these concentrated periods, there is [not][4] enough equipment available to service the needs of the public; that the Commission is concerned with the efficient transportation of energy sources in the most economical and expeditious fashion possible; that the grant of an additional carrier to transport LPG is required by the public need and necessity;

"8. That the supporting shippers have identified the origins, destinations and volume and frequency of the traffic moving in Indiana and the traffic which will be tendered to the Applicant; that some of the supporting shippers have identified the inability of the Protestant to provide service in Indiana; that a public need exists for the service which will not unreasonably impair any existing public service;

"9. That a grant of the application will not have any substantial effect on the operations of the Protestant, nor will it seriously impair the public service of the Protestant or any other carriers authorized to transport LPG within Indiana; that Protestant will continue to be utilized by the supporting shippers; that the supporting shippers represent a broad spectrum of the shipping public in Indiana; that Protestant will not experience any diversion of traffic to the extent that it will impair Protestant's ability to provide an efficient public service;

4. The record indicates that the word "not" is included in the recommended findings but excluded from the PSC's final findings. Appellant has however, included in its brief what appears to be a photocopy of the PSC's final order. The word "not" does appear in this photocopy. This, together with the fact that the recommended order is otherwise identical to the final order indicates that the omission from the record was inadvertent. In light of the final disposition of the application such a conclusion is also necessary for the order to be consistent.

"10. That the volume of traffic moving between points in Indiana is sufficient to sustain the present operations of the Protestant and the proposed common carrier service of the Applicant[.]"

The record contains much testimony from the shippers regarding the need for an additional intrastate common carrier. Due to fluctuating supply, price and transportation availability, Propane Transport's contract carrier authority to carry LPG from a limited number of sources was not sufficient to meet the shippers' needs. In addition to this need for a carrier with a wider intrastate authority, the shippers testified to their need for a carrier with interstate authority. Many shippers testified that they knew of few, if any, carriers of LPG other than Propane Transport and Coastal and that without approval of Propane Transport's application, Coastal would not be able to handle the LPG traffic during the peak winter months. To make matters worse, another carrier of LPG had recently withdrawn its operations from Indiana. In addition to the substantial increase in LPG traffic during the winter months, the shippers also testified that poor weather could force a carrier's vehicles off the road thereby causing late deliveries. An additional carrier with intrastate common carrier authority could help solve this problem. Finally, there is evidence of Coastal's inability to provide adequate service in Indiana when requested by shippers. Taken together, the testimony provides substantial evidence of public convenience and necessity upon which the PSC could base its decision.

There is also substantial evidence in the record upon which the PSC could determine that Coastal's business would not be impaired by approval of the application. This evidence includes the shippers' testimony that they did not intend to divert any business from Coastal if Propane Transport's application was approved. Reliance on common carriers may in fact increase due to new customers, decreased reliance on private carriers, and the withdrawal of Indiana operations of another common carrier.

Coastal presented evidence showing that some of its equipment for transporting LPG sat idle. According to Coastal, this was evidence that another intrastate common carrier would impair its business. It is the function of the PSC however to determine what weight should be given to this evidence. Here again there is substantial evidence to support the PSC decision despite Coastal's evidence. That decision therefore will not be disturbed.

For the above reasons, the order of the PSC is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.