**Rodney GROSS, Petitioner-Appellant,**

v.

**James GREER, Warden, Menard Correctional Center, Illinois Department of Corrections, Respondent-Appellee.**

No. 83–2782.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1984.

Decided Aug. 30, 1985.

William G. Schick, Rock Island, Ill., for petitioner-appellant.

Michael V. Accettura, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before BAUER, Circuit Judge, POSNER, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Petitioner Rodney Gross was convicted of rape and murder in the Circuit Court of Rock Island County, Illinois. He was sentenced to a term of imprisonment of 75–100 years. The Appellate Court of Illinois, Third District, affirmed the conviction. The Illinois Supreme Court denied Gross' motion to appeal. Gross subsequently filed a petition for writ of habeas corpus in the United States District Court for the Central District of Illinois. Judge Michael M. Mihm denied Gross' application for habeas corpus relief. Gross now appeals Judge Mihm's denial under 28 U.S.C. § 1291.

A brief recital of the facts surrounding the case is as follows. On August 29, 1976

at 3:00 P.M. police officers entered the Rock Island apartment of Della Masengarb. In the living room they found Ms. Masengarb's body, nude and with multiple stab wounds. It is estimated Ms. Masengarb died from the stab wounds 12–15 hours before the police entered the apartment. Having observed Ms. Masengarb's body the police officers entered one of the bedrooms in the apartment and found a one-year old boy in a crib and a four-year old girl hiding under the covers of a bed. The policemen asked the girl a few general questions through which the girl offered her name, who she lived with, that her father was in jail, and that "Rodney" had been at the apartment "last night." It is from those statements that police began to piece together a scenario that led to the indictment and conviction of petitioner Gross on rape and murder charges.

■ Petitioner Gross raises numerous issues on appeal. The first concerns testimony at trial from an Assistant State Attorney named Malvik. Petitioner claims that at trial Malvik improperly commented upon his silence. Petitioner claims this reference to his silence was constitutional error in violation of his Fifth Amendment right to remain silent. Yet we note petitioner did not raise this Fifth Amendment objection in a timely manner at trial or in a post-trial motion. Petitioner did object to the hearsay aspect of Malvik's testimony. However, he did not raise a Fifth Amendment objection. According to Illinois Supreme Court Rule 615 (Ch. 110A, S.H.A. § 615), petitioner's failure to object in a timely manner concerning any issue constitutes a waiver of his right to appeal that issue at a subsequent hearing. In sum Rule 615 mandates objections be made in a timely manner in order to preserve the issue on appeal. See *People v. Anderson,* 77 Ill.App.3d 907, 33 Ill.Dec. 323, 396 N.E.2d 850 (1970); *People v. Long,* 39 Ill.2d 40, 233 N.E.2d 389, (1968). Of course, at the federal court level *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

L.Ed.2d 594 (1972) dictates we adhere to state court procedural rules absent a showing of cause or prejudice as a result of the rule. Petitioner has failed adequately to show cause or prejudice here and therefore we hold he is barred from raising his Fifth Amendment argument concerning Malvik's testimony on appeal.

■ Petitioner asserts the procedural default on his part was not explicitly mentioned/adopted by the Illinois Appellate Courts on appeal meaning *Sykes* is inapplicable and he is not barred procedurally from advancing his Fifth Amendment argument. First, while there is an absence of discussion concerning petitioner's apparent procedural waiver in the Illinois Appellate decision, there is also a similar absence of discussion about the merits of petitioner's Fifth Amendment argument concerning his silence, signaling the issue was never presented before the state court. Secondly, assuming *arguendo* petitioner did not waive his Fifth Amendment argument, he must still show the error in admitting Malvik's testimony into evidence reached constitutional dimensions. We conclude even if admitting Malvik's testimony was error, it was harmless error in light of the other substantial evidence of petitioner's guilt. The State Appellate Court provides the following summary of Malvik's testimony:

> "On August 30, [Petitioner Gross], after being informed of his rights, was interrogated by the Assistant State's Attorney Malvik. Malvik sought to obtain the confession of the [Petitioner] by confronting the [Petitioner] with the evidence. [Petitioner] denied killing Della Mesengarb, or being in her house at the time of the killing. Malvik told the [Petitioner] that he 'knew it was a horrible thing' and that he 'was sure that [the person responsible] didn't mean to do it.' Malvik testified also that [Petitioner] at that point 'didn't say anything and then he said 'take me back to my cell.'"

Malvik's reference to petitioner's silence must be compared to the following evidence of petitioner's guilt. A pair of blood-soaked jeans were found in a room in which petitioner often slept. Petitioner's blood type, which is rare, was found on the jeans. Petitioner had little explanation for the pants while testifying at trial. Three county jail inmates testified petitioner admitted he killed Ms. Masengarb. A fourth inmate testified petitioner told him he had killed a woman with a knife. It is inconceivable from the record before us that all four inmates would be involved in a conspiracy to frame petitioner. In addition to the above, the state also introduced testimony of a friend of petitioner's who was drinking with him the night of the incident. The friend testified petitioner was in a fight that night at the bar and after the fight said to him, "Let's go out and fuck someone up." In light of the overwhelming evidence against petitioner we conclude the admission of Malvik's testimony was not prejudicial error.

■ For similar reasons we must reject petitioner's second contention that the prosecutor's repeated cross-examination technique emphasizing the veracity of state witnesses is reversible error. The only time petitioner objected to such testimony was during the following exchange:

> Q. [By State] Did you have any conversation with Michael McDowell?
>
> A. [By Petitioner] No.
>
> Q. Mike McDowell is a liar?
>
> A. Yes.
>
> Mr. Shick [sic]: [Petitioner's Attorney] I will object to that.
>
> By the Court: [Petitioner's Attorney] Objection is well taken.

We believe such trial techniques on the part of the prosecution, while not to be condoned, were not reversible error in view of the other evidence against petitioner documented above.

■ Petitioner's third contention is that the admission of "other crimes evidence" was in violation of his right to due process because the crimes were not sufficiently related to invoke the *modus operandi* doctrine. We disagree. The state produced two witnesses, both women in the seventeen to twenty-year old age bracket, who

testified petitioner broke into their parents' home where they resided during the early morning hours. They further testified petitioner had brandished a potentially deadly weapon in hand, threatened them and then sexually assaulted them—facts similar to the case at bar. These two assaults took place four and thirteen months before the murder in the case *sub judice.* Evidence of the above incidents was properly admitted for the limited purpose allowed—to show either intent, motive, design, identification or presence. See *People v. Pavic,* 104 Ill.App.3d 436, 60 Ill.Dec. 175, 432 N.E.2d 1074 (1982). The evidence attempted to identify petitioner as involved in a series of crimes with his signature/handiwork attached to them. We do not believe evidence of these other crimes so unrelated or prejudicial that it violated petitioner's constitutional right to a fair trial. We deem the evidence relevant and believe the jury was entitled to consider it.

We also note to reverse the state court evidentiary ruling concerning other crimes evidenced here, the standard originally enunciated in *United States ex rel. Harris v. Illinois,* 457 F.2d 191, 198 (7th Cir.1972) must be met:

Generally, ... the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved.

In *United States ex rel. Bibbs v. Twomey,* 506 F.2d 1220 (7th Cir.1974), it was stated:

The following general rule ... remains intact that evidentiary questions are not subject to review by a federal court in a habeas corpus proceeding by a state prisoner unless there is an error of such magnitude as to deny fundamental fairness.... In this area, federal courts must proceed with caution.... To hold otherwise would put federal courts in the role of reviewing courts over the courts of the states even when no constitutional errors have been made.

*Id.* at 1223. See also *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *U.S. ex rel. Clark v. Fike,* 538 F.2d 750, 757 (7th Cir.1976).

In sum, we see nothing fundamentally unfair or conspiciously prejudicial here in admitting the other crimes evidence.

■ As part of his argument concerning the admission of other crimes evidence petitioner further claims he was denied his Fourteenth Amendment due process rights because the trial court gave the jury an improper limiting instruction concerning the *modus operandi* doctrine. Petitioner asserts the trial judge erred when he told the jury it could consider the other crimes evidenced solely on the issue of petitioner's identification, presence, intent, motive and design. We agree with the district court that considering the other crimes evidence was properly admitted, the trial judge's limiting instruction did not further prejudice petitioner's case. Further, the trial judge carefully reminded the jury in the instruction that the other crimes evidence was only to be considered for "the limited purpose for which it was received." (See district court order p. 2.) We see no reversible error in the instruction.

Petitioner's fourth contention is that the admission into evidence of a police officer's testimony concerning the out-of-court statement of a four-year old child was inadmissible hearsay and in violation of the Confrontation Clause of the Sixth Amendment. The issue here concerns the statement made by the four-year old at the victim's apartment that "Rodney [petitioner] had been at the apartment last night." The state trial court held the statement fell under the *res gestae* exception to the hearsay rule as an excited utterance. Petitioner contends this ruling was erroneous. He believes the child's unavailability as a witness was never justified and that any statement concerning him made twelve hours after he allegedly committed the murder could in no way be considered an excited utterance.

■ It is well-established that the lapse of time between the startling event and the out-of-court statement, although relevant, is not dispositive in the applica-

tion of the *res gestae* exception to the hearsay rule.

... [W]hile the time element is important, it is not in itself controlling. Indeed, as has been well asserted, no inflexible rule as to the length of interval between the act charged against the accused and the declaration of the complaining party, can be laid down as established. It has been held, moreover, that where, as in the present case, the victim is of such an age as to render it improbable that her utterance was deliberate and its effect premeditated, the utterance need not be so nearly contemporaneous with the principal transaction.... The declarations of the child—a party to the actual occurrence—were made under such circumstances and so recently after the occurrence of the transaction as to preclude the idea of reflection or deliberation. (Footnotes omitted.) *Beausoliel v. U.S.*, 107 F.2d 292, 295 (D.C.Cir.1939).

In *United States v. Glenn*, 473 F.2d 191 (D.C.Cir.1972) it was stated:

Declarations relating to the circumstances of a violent crime, made by the victim shortly after its occurrence, are sometimes admitted in evidence as exceptions to the hearsay rule, upon the theory that the shock of the injury and the excitement of the moment have produced an utterance that is spontaneous and sincere as distinguished from one engendered by deliberation and design. Such statements may be admissible although made in response to an inquiry. The decisive factor is that the circumstances reasonably justify the conclusion that the remarks were not made under the impetus of reflection. Whether this conclusion is justified depends upon the facts of each case and must be determined by the District Court in the exercise of sound judicial discretion. Such discretionary action is of course subject to review and must be reversed if clearly erroneous. [Citations omitted.]

*Id.* at 194–95. See *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1058 (6th Cir.1983); *United States v. Iron Shell*, 633 F.2d 77, 85–86 (8th Cir.

1980); *People v. Parisie*, 151 Ind.App. 157, 278 N.E.2d 310 (1972).

We are sufficiently convinced the lower courts used their discretion soundly in allowing the out-of-court statement of the four-year old child to be admitted. There is no reason to believe her statement to the officer was made with any premeditation, design or reflection. All indications are the youngster was petrified and cowering beneath the covers of a bed. The child's temperament appears to be one of shock and fear. Her answers to the officer's questions cannot reasonably be deemed insincere or the product of some premeditated deliberation.

■ We are also unconvinced the failure to put the four-year old on the stand was reversible error. A cross-examination of this child would more probably have confused the child and quite possibly could have generated inaccurate statements from that child. Considering we are concerned with a four-year old with a limited memory, her most reliable and trustworthy account of her mother's murder probably took place upon inquiry from police officers as soon as possible after the crime occurred.

The case of *Stewart v. Cowan*, 528 F.2d 79 (6th Cir.1976) cited by petitioner is easily distinguishable. That case stands for the principle that a police officer may not take the stand and accuse the defendant of a crime claiming he received his evidence from anonymous phone callers. In *Stewart* defendant did not even know who his accusers were. In the case *sub judice* petitioner knew the four-year old who had made the statement. A cross-examination of the child at trial long after the incident had occurred would have had little impact on the jury even if her memory failed her due to her tender age. Further, it should also not be forgotten that the four-year old's statements were hardly pivotal in the end in view of the other evidence petitioner failed to sufficiently refute (his confession in front of the inmates and the blood-soaked jeans, for example).

We see no clear reversible error in admitting the hearsay statement of the four-year old child through the police officer under the *res gestae* exception. The decision, which was within the discretion of the trial court, reveals no abuse of that discretion considering the particular circumstances surrounding this case and the age of the declarant.

■ Finally, we disagree with petitioner that the state appellate court did not employ the harmless error standard properly in its review of the case. Petitioner's argument here suggests that unless a reviewing court explicitly states in its decision, "we do not find the errors harmless beyond a reasonable doubt" and/or cites *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), its harmless error analysis falls short of federal constitutional requirements. The state appellate court concluded:

> We do not believe, even considering that respective errors referred to and charged by defendant to exist in this case, that any other verdict would have been returned by the jury if such evidence objected to was present in the cause.... It is clear that the evidence of defendant's admission of guilt and the corroborating evidence from defendant's bloody jeans, which was presented in the instant case was adequate, without more, to support the finding of guilt as to defendant. It is also apparent from the record, as noted in the recital of the facts, that the finding of guilt resulted, not from potential errors charged by defendant, but rather from the evidence of the confession and the bloody jeans.

We cannot conclude as petitioner does that a state court decision which uses such language has not applied the harmless error standard appropriately. Petitioner seizes upon certain words and phrases used by the state appellate court (such as when that court says, "... the evidence of guilt outweighs the prejudicial effect of errors assigned by defendant." See 393 N.E.2d at

1311) to conclude the strict "beyond a reasonable doubt" standard had not been applied. Yet the concluding paragraphs printed above satisfy us that the harmless error standard was appropriately applied in this case. After all, the test does not revolve around what words are used or which cases are cited. The key is in the review of the reasoning and analysis behind the appellate court's conclusion that the rule should be employed in affirming a conviction.

In the case at bar we believe that, assuming *arguendo* error was committed, the error was harmless beyond a reasonable doubt.[1] We see no compelling reason to reverse a similar conclusion reached by a state appellate court which simply used less familiar verbiage. For the reasons set forth above, the order of the district court denying petitioner habeas corpus relief is AFFIRMED.

---

1. According to both federal constitutional standards and the criteria set forth in *Eberhardt v.* *Bordenkircher*, 605 F.2d 275, 279 (6th Cir.1979), a case heavily cited by petitioner.