MARILYN J. ODLE d/b/a BUD'S WRECKER SERVICE *v.* PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 2-972A64. Filed June 27, 1973. Rehearing denied July 31, 1973. Transfer denied December 10, 1973.]

*Marshall E. Williams,* of Indianapolis for appellant.
*Theodore L. Sendak,* Attorney General for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought by Marilyn J. Odle, d/b/a Bud's Wrecker Service (Bud) from denial by the Public Service Commission (the Commission) of her application for a Certificate of Public Convenience and Necessity to operate a wrecker and towing service of disabled vehicles.

We affirm.

## FACTS

The facts and evidence most favorable to the Commission are:

On April 5, 1971, Bud applied to the Commission for a Certificate of Public Convenience and Necessity to operate as a common carrier by motor vehicle over irregular routes transporting "wrecked or disabled vehicles by wrecker truck-away or tow truck service between all points and places in the State of Indiana."

Of the various types of intrastate service rendered by towing service common carriers, Bud only sought a Certificate which would allow towing of disabled vehicles from the temporary depot to which they had been initially moved in

the emergency move to the terminal of the owner of the disabled truck. Bud already held a Certificate for the movement necessary to bring a replacement vehicle from the terminal of the owner of the truck to the location of the disabled vehicle.

A public hearing was duly held on May 19, 1971 before the Commission's attorney-examiner. No objections or protests being filed, Bud presented evidence in support of its application.

Bud's manager testified that the authority under which they were currently operating was contained in a Certificate of Public Convenience and Necessity which authorized only the transportation of replacement vehicles and that Bud was now seeking authority to transport disabled vehicles. He described the facilities and financial status of Bud's Wrecker Service and the various customers using Bud regularly for towing of disabled vehicles and replacement vehicles. A financial statement and a five-page list of current commercial accounts were introduced in evidence.

Other witnesses were employees of various freight lines, who testified that they had used Bud's services in the past and hoped Bud would receive authority to "continue" this service.

On October 22, 1971 the hearing examiner entered a Recommended Order and findings granting the Certificate:

"1. That the Commission has jurisdiction of the parties hereto, and the subject matter of this cause, which is properly before the Commission for hearing, finding, determination and order.

2. That Applicant is a resident of the State of Indiana, with a principal place of business at 1906 South Olive Street, South Bend, Indiana.

3. That Applicant is financially able to furnish adequate service; and that Applicant has a net worth of approximately $25,000, and had a net income of approximately $25,000 for the year of 1970.

4. That the proposed operation will not unreasonably impair the existing public service of any authorized common

carrier serving the same territy [sic]: that the supporting shippers required the services of the Applicant approximately 25 times a week, and that this is the only consistent service available for them at this time.

5. That the proposed operation will not threaten the safety of the public or be detrimental to the public welfare; that Applicant has performed the service pursuant to its authority granted by this Commission for replacement of wrecked or disabled vehicles for over 50 some companies, and that this requested authority will supplement said replacement of wrecked or disabled vehicles and provide a regular and continuance service for these said 50 companies.

6. That the public convenience and necessity requires the proposed operation; that the supporting shippers are in need of Applicant's service at least 25 times per week; and that Applicant carries on a reputable service and will serve the need required by some 50 companies already being served under the authority now held for replacement of wrecked or disabled vehicles."

The Recommended Order stated (in part):

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that a certificate of public convenience and necessity be issued to Marilyn J. Odle d/b/a Bud's Wrecker Service, 1906 S. Olive Street, South Bend, Indiana, to operate motor vehicles as a common carrier of property, intrastate, upon the performance of the conditions hereinafter set out, as follows, to-wit:
*Wrecked or disabled motor vehicles by wrecker, truckaway or tow truck service.* Between all points and places in the State of Indiana, over irregular routes."

On July 28, 1972, with no further evidence or hearing, the Commission rendered its findings and Order denying Bud's application, which Denial Order stated insofar as is material:

"1. That the Commission has jurisdiction of the parties hereto, and the subject matter of this cause, which is properly before the Commission for hearing, finding, determination and order.

2. That Applicant is a resident of the State of Indiana, with a principal place of business at 1906 South Olive Street, South Bend, Indiana.

3. That the testimony of the supporting witnesses did

not reveal a lack of, or need for, the type of authority sought herein; that the said supporting witnesses did not give one instance where such additional service was needed and could not be readily obtained from existing services.

4. That the public convenience and necessity do not require the service as proposed herein, and therefore said application herein should be denied, and it will be so ordered.

IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that the application herein be, and the same is, denied."

A Petition for Rehearing filed by Bud's sought to introduce additional evidence relating to the need for the requested authority, which was denied by the Commission on September 1, 1972. This appeal followed.

## ISSUES

The issues may be consolidated as follows:

ISSUE ONE—Is the Commission's Order contrary to law because it changed the Hearing Examiner's findings of fact and reversed his Recommended Order granting a Certificate to Bud?

ISSUE TWO—Did the denial by the Commission of the Petition for Rehearing constitute an abuse of discretion?

As to Issue One, Bud contends that the Commission is bound by the Hearing Examiner's findings of fact and must enter an Order consistent therewith, unless it hears additional evidence or fully reviews evidence heard by him.

The Commission responds that the fact finding and decision-making power are vested solely in the Commission, and the Hearing Examiner's findings and suggested order are advisory only and may be altered or amended by the Commission in its discretion.

As to Issue Two, Bud asserts that the denial of rehearing by the Commission was an abuse of discretion in that the evidence which Bud wished to submit was not cumulative.

The Commission answers that Bud sought to submit additional evidence only which is not "sufficient reason" within the

meaning of IC 1971, 8-2-7-6, Ind. Ann. Stat. § 47-1215 (Burns 1972 Supp.), to grant a rehearing.

## DECISION

ISSUE ONE

CONCLUSION—It is our opinion that the Commission's Order changing the findings of fact and reversing the Recommended Order of the Hearing Examiner is not contrary to law because the ultimate power to find facts and grant or deny Certificates of Public Convenience and Necessity resides exclusively in the Commission and not in the Hearing Examiner.

Bud's position that the Commission is bound by the Examiner's findings of fact and Recommended Order unless it hears additional evidence rises or falls on interpretation of this statute. IC 1971, 8-2-7-6, Ind. Ann. Stat. § 47-1215 (Burns 1972 Supp.):

47-1215. POWERS OF THE COMMISSION.—*The commission is hereby vested with power and authority to supervise and regulate every motor carrier subject to the provisions of this act,* to fix just and reasonable rates, fares and charges, and to prescribe classifications, rules and regulations pertaining thereto, all of which shall be just and reasonable; to regulate and supervise the schedules, service, safety, methods and hours of operating the same. The commission is further vested with power and authority to require the filing of annual and other reports and the submission of all such records and information as may be reasonably necessary to aid the commission in the exercise of the powers herein conferred upon it. . . .

If the commission, after notice and hearing, finds, upon any such investigation, that such person has failed to comply with any such provision or requirement, the commission shall issue an appropriate order to compel such person to comply therewith.

The commission, or any member thereof, or any authorized representative of the commission, shall have the power to compel the attendance of witnesses, swear witnesses, take their testimony under oath, make record thereof, and after such record is made under the direction of a commissioner, examiner, or authorized representative of the com-

mission, the commission, or a majority thereof, may upon such record, make an appropriate order.

*The commission shall have the power to hear all petitions, applications or motions filed with the commission.* Such hearings may be conducted by the commission, by any member of the commission or by any examiner authorized by the commission. In case the hearing is conducted by an examiner, such examiner shall be required to promptly, but not later than thirty [30] days after the conclusion of the hearing, unless such time is extended by order of the commission, report to the commission the facts established by the evidence and to submit a suggested order, showing the findings and a decision therein, to the commission. *Such orders recommended by such examiner* shall be held for not less than ten [10] days during which time interested parties may file written exceptions thereto. In case no exceptions are filed, the finding of facts and decision in form of order suggested by such examiner *shall be the order of the commission, unless the commission, in its discretion, directs otherwise.* . . .

The commission shall have the power and authority, under this act, to do and perform all reasonably necessary things to carry out the purpose and intent of this act, whether herein specifically mentioned or not, including the power, subject to the approval of the governor, to employ and fix the compensation of such examiners, investigators, clerks and other employees as it may deem necessary or advisable for the effective administration of this act. (Emphasis supplied.)

Bud's interpretation of this statute is that if the Commission authorizes a Hearing Examiner to hear an application for a Certificate he then becomes the finder of facts and the Commission is bound by his findings and may not alter them. Nor can it in its discretion interpret these facts differently and reverse the decision of the Hearing Examiner unless it takes further action by hearing additional evidence or reviewing the entire record of the application in question. Differently stated, once the Commission delegates its function to the Hearing Examiner to hold a hearing and make a record thereof the Commission can then only act upon that record and the facts found by the Hearing Examiner. Its alternative is to conduct the hearing and make a record of its own and if it

does not do so it is bound by the action of its duly authorized agent.

This interpretation of the statute stands naked of authority except for reference by Bud to *Marshall* v. *Tribune-Star Publishing Co., Inc.* (1968), 142 Ind. App. 556, 236 N.E.2d 508, affirmed 251 Ind. 557, 243 N.E.2d 378, a Workmen's Compensation case which Bud finds analogous. And so it might be were it not for three important distinctions. One, it dealt with interpretation of an entirely different statute, *i.e.*, IC 1971, 22-3-4-7, Ind. Ann. Stat. § 40-1511 (Burns 1972 Supp.).[1] Two, the Hearing Examiner was a member of the Industrial Board. Three, even if *Marshall* be construed as standing for the proposition that the Full Industrial Board is bound by the facts found by its Hearing members unless there is a new hearing there is a long line of Indiana cases which hold exactly the opposite, *i.e.*, that a hearing by a Full Administrative Board is *de novo*, and not a review for errors in the findings and opinion of the Examiner. *Hayes* v. *Joseph E. Seagram & Co.* (1944), 222 Ind. 130, 52 N.E.2d 356; *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N.E.2d 219; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399; *Burton* v. *Rock Road Construction Co.* (1968), 142 Ind. App. 458, 235 N.E.2d 210; *Ogilvie* v. *Review Board of Indiana Employment Security Div.* (1962), 133 Ind. App. 664, 184 N.E.2d 817; *Hoadley Quarries, Inc.* v. *Eads* (1959), 129 Ind. App. 670, 160 N.E.2d 202; *School City of Hammond* v. *Moriarity* (1950), 120 Ind. App. 663, 93 N.E.2d 367; *Eades* v. *Lucas* (1939), 107 Ind. App. 144, 23 N.E.2d 273.

There are no murky depths to this statute. It is clear from

1. "REVIEW OF EVIDENCE OR HEARING BY FULL BOARD.— If an application for review is made to the board within twenty [20] days from the date of the award, made by less than all the members, the full board, if the first hearing was not held before the full board, shall review the evidence, or, if deemed advisable, hear the parties at issue, their representatives and witnesses as soon as practicable and shall make an award and file the same with the finding of the facts on which it is based and send a copy thereof to each of the parties in dispute, in like manner as specified in the last foregoing section. [Acts 1929, ch. 172, § 6, p. 536; 1969, ch. 94, § 6, p. 202.]"

top to bottom that *the Commission* is vested with the power to regulate motor carriers. *The Commission* or "any ██ authorized representative of the Commission" acting in effect as its agent has the power to hear witnesses, take testimony under oath and make a record thereof. *The Commission* has the power to "hear all petitions, applications or motions filed with the Commission." While a hearing may be conducted by a member of the Commission or by an Examiner *authorized* by the Commission, if the hearing is conducted by an Examiner a report must be made to the Commission as to the findings of fact and the suggested Order which after a period of time becomes final "unless *the Commission* in its discretion directs otherwise."

Bud's derogation of the statute would improperly deprive the Commission of its ultimate right to find the facts and make a decision thereon.

The Commission may, and did, reject the findings of the Hearing Examiner who was not a member of the Commission and there is no showing in the record or otherwise that the Commission's procedure was not in accordance with this statute.

The plain unambiguous terms of the statute vest the ultimate fact-finding and decision-making authority in *the Commission*. To interpret it as lodging in a non-member Hearing Examiner finality as to his findings of fact and decision independent of the Commission is contrary to the express statutory scheme for the supervision and regulation of motor carriers.

In so holding, we are in accord with recognized authorities and cases in other jurisdictions.

"It is true in many state agencies, as in the federal agencies, that the hearing officer occupies an inferior position; and that the agency, acting through its staff employees, may redetermine *de novo* the facts found by the hearing officer, and rewrite his proposed decision." 1 Cooper, *State Administrative Law*, Chapter 1, Sec. 4(F) at page 337 (1965 ed.). See also: 2 Davis, *Administrative Law Treatise*, Sec. 10.04 (1958 ed.), and cases cited therein.

ISSUE TWO

CONCLUSION—It is our opinion that denial of rehearing did not constitute an abuse of discretion by the Commission.

The Commission's power to grant a rehearing is found in IC 1971, 8-2-7-6, Ind. Ann. Stat. § 47-1215 (Burns 1972 Supp.) :

> "After a decision, order or requirement has been made by the commission in any proceeding under this act, *any party thereto may make application to the commission for* reconsideration or *rehearing* of the same, or of any matter determined therein, *and it shall be lawful for the commission, in its discretion, to grant such* reconsideration or *rehearing if sufficient reason therefor be made to appear.* Applications for reconsideration or rehearing shall be governed by such rules and regulations as the commission may prescribe." (Emphasis supplied.)

Bud, like other applicants for a Certificate of Public Convenience and Necessity, at all times had the burden of proving, by a preponderance of the evidence, that public convenience and necessity would require the proposed operation and that to grant the application would not unreasonably impair the existing public service of any authorized common carrier. IC 1971, 8-2-7-15(b), Ind. Ann. Stat. § 47-1217b (Burns 1965 Repl.). *Kosciusko Co. R.E.M.C.* v. *Public Service Commission* (1948), 225 Ind. 666, 672-673, 17 N.E.2d 572.

So the purpose of the original hearing was for the applicant (Bud) to demonstrate that public convenience and necessity required the proposed new service. Bud failed to demonstrate such need in the opinion of the Commission on the evidence before it.

Bud sought a rehearing for the purpose of introducing "additional evidence" on the subject of need, *i.e.*, to sustain its original burden of proof.

The Commission cannot be said to have abused its discretion to grant a rehearing for the purpose of receiving "additional evidence" as to the need for the Certificate. Bud does not claim

to have newly discovered evidence or some other equitable reason to support its insistence on a rehearing, nor does it cite any authority that it is an abuse of discretion for the Commission to refuse rehearing for the purpose of submitting "additional evidence."

The decision of the Commission is therefore affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 297 N.E.2d 453.