JACK GRAY TRANSPORT, INC. *v.* PUBLIC SERVICE COMMISSION OF INDIANA, GIBCO MOTOR EXPRESS, INC.

[No. 2-977A355. Filed September 26, 1978.]

---

*Robert W. Loser, II, Loser & Loser*, of Indianapolis, for appellant.

*Michael V. Gooch, Harrison, Moberly & Gaston*, of Indianapolis, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Protestant-appellant Jack Gray Transport, Inc. (Jack Gray), appeals from an order of appellee Public Service Commission of Indiana (P.S.C.), wherein a common carrier license was issued to applicant-appellee Gibco Motor Express, Inc. (Gibco).

## FACTS

On June 14, 1976 Gibco filed with the P.S.C. an application, wherein it sought a certificate of public convenience and necessity to operate motor vehicles as a common carrier of property in intrastate commerce. Prior to filing its application for certification as a common carrier Gibco was licensed by the P.S.C. as a contract carrier.[1] When Gibco filed its

---

1. "Common carrier" and "contract carrier" are defined in IC 1971, 8-2-7-2 (Burns Code Ed.) as follows:

"(g) The term 'common carrier' shall mean any person that holds himself out to the general public to engage in the transportation by motor vehicle of passengers or property, for compensation, whether over regular or irregular routes.

(h) The term 'contract carrier' shall mean any person who engages in transportation by motor vehicle of passengers or property, for compensation (other than transportation referred to in subparagraph (g) of this section), under continuing

application for certification as a common carrier, Jack Gray and certain other licensed common carriers timely filed their protests to the application.

After hearing all the evidence the P.S.C. entered the following findings of facts and conclusions of law:

## "FINDINGS OF FACT

Applicant is an Indiana corporation currently holding authority from the Public Service Commission of Indiana, including Permit No. 3997-B, 1, which is contract authority with two (2) named shippers for the transportation of scrap metal. Applicant has shown it has adequate equipment and is financially and otherwise fit to perform the desired transportation. Applicant is familiar with both the transportation of scrap metal and with the facilities of many of the shippers supporting the application.

The supporting shipper, Dasco Corporation, located in Elwood, Indiana, is a secondary aluminum smelter; Oscar Winski Company, Inc., Lafayette, Indiana, is in the business of recycling scrap iron and steel; Winski Brothers, Inc., Frankfort, Indiana (unrelated to Oscar Winski Company, Inc.), is in the business of scrap metal, handling structural steel, and solid waste management. The Kroot Corporation, Columbus, Indiana, is in the scrap processing business, remelting aluminum making sows, selling steel; Mervis and Sons, A Division of Mervis Industries, Kokomo, Indiana, is a scrap recycler.

The shippers, collectively, have shown a need for service between their cities of business and the State of Indiana. Adequate representative points throughout the State were given; most of the shippers had a need for both inbound and outbound scrap movements; volume figures were given for the stated movements; and at least two (2) of the shippers acted as brokers, necessitating movement from or to points other than their particular company facilities.

The shippers predicated their need for the use of applicant on several bases, not the least of which was service inadequacies by

contracts with one [1] person, or a limited number of persons, either (a) for the furnishing of transportation services through the dedication of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer.

\* \* \*"

both of the remaining protestants. Of the six (6) shippers, for example, five related unsatisfactory experiences with Jack Gray Transport, Inc. and four (4) of the six (6) experienced unsatisfactory service with Skinner Motor Express, Inc.

The most prevalent complaint against both protestants was that they promised an arrival time to pick up scrap but did not appear at the appointed time, and that this led to prospective loss of business, down time for the shipper's employees with the accompanying loss of revenue, and it was stated that these were not 'isolated' instances but happened on numerous occasions during the period of time the shippers used either or both of the protesting carriers. Other complaints included use of the wrong type of equipment, the emphasis of the carrier's transportation of coal over scrap metal, failure of one or the other of the carriers to solicit their business, excessive distance from carrier to shipper, and the complaint that with only two (2) large scrap carriers serving a substantial part of the state, competition and thus the necessity to provide adequate service are lacking.

It is the Commission's conclusion based upon the shipper evidence that the public convenience and necessity element has been shown in large part by the numerous instances of service failures recited by the shippers and the other complaints noted. It is believed that the evidence calls for an increase in competition in view of the number of service complaints and the finding that the lack of significant competition has been a factor compounding the service problems. While protesting carriers have the requisite authority, they have been shown unable to meet the stated transportation needs of the shipping public.

While we do not believe the evidence will support a statewide grant as requested by applicant, we do believe the partial grant as set forth below will meet the shippers' needs and is consistent with the evidence. We note, parenthetically, that we are granting 'between point' authority to facilitate more economical use of equipment on the part of applicant, to better enable applicant to meet the needs of the shippers, and to eliminate, to the extent possible, deadhead nonrevenue bearing miles which are wasteful of fuel.

In view of the fact that our grant is co-extensive with and inclusive of the authority currently held by applicant in its Permit No. 3997-B,1, contract authority, we hereafter cancel that Permit.

Finally, we note that counsel for protestant Jack Gray raised a question at the beginning of the second day of hearing regarding

the subpoena duces tecum of a witness. The Examiner's quashing, upon motion, of the subpoena was duly upheld by the Commission. That decision is hereby affirmed and is based upon the untimeliness of the subpoena, the fact that the items called for in the subpoena duces tecum indicated no time limit, the breadth of the subpoena and the lack of relevancy of the matters requested.

## CONCLUSIONS OF LAW

The Commission, having considered all the evidence, oral and written, and the exceptions filed by the Protestant Jack Gray Transport, Inc., and the briefs in support thereof and in opposition thereto, and being duly advised in the premises, is of the opinion and now finds:

1.   The Commission has jurisdiction of the parties hereto and the subject matter of this cause, which are now properly before the Commission for findings, determination and orders.

2.   The Applicant is financially and otherwise fit to furnish the service proposed.

3.   The proposed operation will not unreasonably impair the existing public service of any authorized common carrier serving the same territory.

4.   The proposed operation will not threaten the safety of the public or be detrimental to public welfare, and the proposed operation will provide a needed transportation service for the commodity sought within the territories granted. The supporting shippers have shown an unrequited need for transportation services to be provided by applicant as noted in the Findings of Fact above.

5.   The public convenience and necessity, therefore, requires the proposed operation to the extent set forth below.

6.   The application, to the extent hereafter recited, should be granted, and it will be so ordered.

7.   That the exceptions of the Protestant Jack Gray Transport, Inc., should be overruled and it will be so ordered."

Pursuant to making the findings of fact and conclusions of law set forth above the P.S.C. entered an order approving Gibco's application and permitting Gibco to operate motor vehicles, as common carriers, to haul scrap metal between Elwood, Lafayette, Frankfort, Columbus, Terre Haute, and Kokomo, and between those cities and other points in Indiana. Jack Gray now appeals the decision and order of the P.S.C.

## ISSUES

The issues which have been presented to this court for review are as follows:

1.  Whether the decision of the P.S.C. is arbitrary and capricious.

2.  Whether the evidence was sufficient to support the decision and order of the P.S.C.

3.  Whether the decision is contrary to law.

## DISCUSSION AND DECISION

*Issues One, Two, and Three*

Owing to the interrelated nature of each of the issues which have been presented in this appeal, we shall treat them in a single discussion. Jack Gray contends that Gibco failed to sustain its burden of proving "that public convenience and necessity requires the proposed operation, and that the proposed operation will not unreasonably impair the existing public service of any authorized common carrier, . . . then adequately serving the same territory." See IC 1971, 8-2-7-15(b). Jack Gray urges this court to adopt for common carriers the standards of proof which were set forth in *Graves Trucking, Inc. v. B. G. Trucking* (1972), 151 Ind. App. 563, 280 N.E.2d 834, as applied to contract carriers. We decline to do so.

In *VIP Limousine Service, Inc. v. Herider-Sinders, Inc.* (1976), 171 Ind.App. 109, 355 N.E.2d 441, 442-445, this court stated the following:

"Ind.Ann.Stat. 8-2-7-15 (Burns Code Ed. 1972), the statute which regulates the authority of the Commission to issue common carrier certificates, sets forth only two broadly stated criteria: (1) 'that public convenience and necessity requires the proposed operation' and (2) 'that the proposed operation will not unreasonably impair the existing public service of any authorized common carrier . . . .' These criteria constitute the ultimate facts to be found by the Commission before a certificate may be issued. However, judicial review may not be conducted solely with reference to findings which are limited to these ultimate facts.

As stated in *City of Evansville, v. Southern Indiana Gas & Electric Co.* (2d Dist. 1976), [167] Ind. App. [472], 339 N.E.2d 562, 571:

'. . . the statutory standard requires that the Commission's decision contain specific findings on all the factual determinations material to its ultimate conclusions.'

Thus, the Commission must find the 'basic facts' which support a conclusion that the ultimate fact exists. . . .

\* \* \*

We may not, under the guise of judicial review, infer from the findings of ultimate fact the existence of the basic facts essential to those ultimate conclusions. To do so is to indulge in the fact finding process which is the exclusive domain of the Commission. . .

\* \* \*

V.I.P. urges us to establish certain 'minimum standards of proof' or 'a minimum burden of proof' which must be met by an applicant in every common carrier proceeding, citing *Graves Trucking, Inc. v. B. G. Trucking, Inc.* (3d Dist. 1972) 151 Ind.App. 563, 280 N.E.2d 834.

\* \* \*

*Graves Trucking*, does not call for the establishment of a unique, inflexible minimum standard of proof applicable to every type of contract or common carrier application. The context in which the *Graves Trucking* case speaks of minimum standards or a minimum burden connotes the nature and type of evidence necessary to support the issuance of a contract carrier certificate. Contract carriers are required 'to meet the distinct need of each individual customer' Ind.Ann.Stat. 8-2-7-2(h)(b), *supra*. The 'distinct need' criterion is more susceptible to specificity of evidence than the 'public convenience and necessity' criterion which must be met by a common public carrier. Within that susceptibility lies the distinguishing point between *Graves Trucking, supra* and this case.

In the 'distinct need' contract carrier situation, the supporting shippers are a clearly defined evidentiary source, whose needs are to be served by the applicant. The identified individual shippers can readily testify as to the specifics of their respective 'distinct needs'. The common carrier applicant may not so readily amass and present supportive evidence, since that evidence must relate to a multifaceted, if not illusory, conglomerate — the public at large. Because the public's needs and demands are gauged by many variables, specific evidentiary factors necessary to establish 'public convenience and necessity' may not, therefore be categorized or fixed.

It ill behooves a court of review to establish for all cases, a qualitative and quantitative evidentiary standard for proof of public convenience and necessity. We hold, therefore, that the formulation of 'minimum standards of proof' or evidentiary criteria which will aid the Commission in determining the presence or absence of the ultimate facts in a given common carrier case must be left in large measure to the informed discretion of the Commission." (Original emphasis)

*VIP Trucking, supra,* sets forth the law which is applicable to the case at bar. Gibco had the burden of proving with basic facts that "public convenience and necessity requires the proposed operation" and "that the proposed operation will not unreasonably impair the existing public service of any authorized public carrier." We hold that Gibco met its burden of proof and that the decision of the P.S.C. is supported by sufficient evidence, is not arbitrary and capricious, and is not contrary to law.

The basic facts show that Gibco is financially stable, has adequate equipment, is familiar with the process of transporting scrap metal, and is familiar with the facilities of many of the shippers supporting Gibco's application. The shippers showed need for more common carriers of scrap metal by giving volume figures for scrap metal movements and by showing that the present common carrier service, which they termed inadequate, led to loss of business and revenues. Other evidence of service inadequacies by the present carriers included use of the wrong type of equipment, the emphasis of the carriers' transportation of coal over scrap metal, failure of one or more of the carriers to solicit the shippers' business, and the excessive distance from carrier to shipper. Such evidence adequately shows the need for additional common carriers, and reasonably gives rise to the inference that the present carriers will not be harmed by the proposed operation.

Jack Gray has waived any procedural error which may have been made by the P.S.C. by its failure to present this court with cogent argument and citations of authority on the matter. See Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 380 N.E.2d 1250.